IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

MATTHEW HALE #15177-424
USP-Marion CMU
P.O. Box 1000
Marion, IL 62959,

Plaintiff,

vs.

MICHAEL COLLIS,

COUNTER TERRORISM UNIT, and

FEDERAL BUREAU OF PRISONS,

Defendants.

(all located at 320 First Street, NW
 Washington, DC 20534)

JURY DEMAND

Case: 1:21-cv-01469 JURY DEMAND
Assigned To : Boasberg, James E.
Assign. Date : 5/27/2021
Description: Pro Se Gen. Civ. (F-DECK)

## VERIFIED COMPLAINT

The following are allegations common to all claims for relief:

### The Parties

1. Plaintiff Matthew Hale (hereafter "Hale") is a federal prisoner, philosopher, ordained minister in the Church of the Creator (hereafter "Church"), and accomplished author of two critically acclaimed books, Ending White Slavery and The Racial Loyalist Manifesto, both books being written and published during his tenure as a federal prisoner. He is currently housed within the "Communications Management Unit" (hereafter "CMU") at the United States Penitentiary in Marion, Illinois.

2. Defendant Michael Collis (hereafter "Collis") is an analyst for the "Counter Terrorism Unit" of the Federal Bureau of Prisons, that unit and his place of employment being located at 320 First Street, NW Washington, DC 20534. His duties include the monitoring, from afar, of all of Hale's communications with

1

the outside world, along with the communications of several other prisoners.

3. Defendant "Counter Terrorism Unit" (hereafter "CTU") is a special unit of the Federal Bureau of Prisons ostensibly formed to provide increased monitoring of prisoners who have been convicted of terrorist offenses. However, many prisoners at the CMU in Marion, Illinois lack any such background, including Hale, and yet their communications are monitored by the CTU all the same.

4. Defendant Federal Bureau of Prisons (hereafter "BOP") is an agency of the United States Justice Department entrusted with housing those prisoners who have been convicted of federal crimes.

## JURISDICTION

5. This Court has subject matter jurisdiction of this case since it involves violations of the Constitution of the United States and federal statute. It has personal jurisdiction over the defendants because they are located in Washington, DC.

## NATURE OF THE CASE

6. As an author, Hale would naturally like for his books to be read. As a believer in the religion of Creativity, he would like to be able to practice his religious faith just like everybody else. Alas, the gravamen of this case is that 1) the Defendants are refusing to allow the chapters of his <u>third</u> book to leave the prison in order for it to be published, and 2) the Defendants have completely annihilated his right to freedom of speech and the free exercise of religion by banning him from mentioning Creativity, discussing Creativity, or alluding to Creativity or his Church in any way within his correspondence, and banning it otherwise within the BOP in general. Furthermore, the hatred of Defendant Collis in particular is so great that he routinely rejects Hale's correspondence on "Creativity" grounds even when the letters in question have

nothing to do with Creativity, and that he seeks to punish him for his purely lawful speech otherwise. Thus Hale has been totally deprived of his constitutional right to express his opinions in book form, or otherwise in any manner which the Defendants deign to consider as falling within their already illegal "Creativity" ban. In sum, the conduct complained of here is not only manifestly and blatantly illegal but shocking to the conscience of anyone and everyone who possesses an ounce of understanding and respect for basic constitutional guarantees; had the Defendants acted in a similar way towards a Christian, Muslim, or Jewish prisoner, no one can deny that relief for that misconduct would be speedily and justly forthcoming; in fact, no case would have had to be brought here in the first place since the Defendants would have had the good sense and decency to honor the clearly established rights of the prisoner in question. Hale therefore seeks injunctive relief from the CTU and BOP--and money damages from Collis--for their pathetic, odious, and heinous actions so that his precious First Amendment and statutory rights as a person, prisoner, and American citizen may be vindicated.

7. The Defendants will defend this case on the grounds that 1) the Tenth Circuit has already ruled--in a case also involving Hale and the BOP--that Creativity is _not_ a religion within the meaning of the First Amendment and that Hale is therefore collaterally estopped from seeking relief to the contrary in this Court and 2) that Hale's book may be lawfully suppressed by the Defendants because it is a "Creativity" book and Creativity lacks any religious or freedom of speech rights. However, the Defendants are wrong for at least several reasons: 1) collateral estoppel is inapplicable here since fundamental constitutional rights are at issue, 2) the Tenth Circuit is actually in clear and provable violation of Supreme Court precedent when it comes to the definition of religion and Creativity _is_ in fact a religion under that precedent (see Peterson v. Wilmur Communications, Inc., 205 F. Supp. 2d 1014 (E.D. Wisc. 2002),

3

applying this Supreme Court precedent specifically to Creativity), 3) Hale is entitled to the protection of that precedent--as applied both by this circuit and the Seventh Circuit within which he now resides--since he has a constitutional right to the protection of the law where he <u>lives</u>, not that of some other place, and 4) Hale's book, for its part, is protected by his right to freedom of <u>speech</u> and does not fall under any ban on Creativity <u>regardless</u> of whether that ban is lawful or not within the Seventh Circuit where he now resides.  In addition, several of the exceptions to the general rule of issue preclusion found within the Restatement of Judgments, 2d apply to this case (see Section 28 of same, subsections 2, 3, 4, and 5).  Therefore, the Defendants' defenses to this case can and should fail. Put simply, the law is on Hale's side and judgment should proceed to him accordingly.

<u>CAUSES OF ACTION</u>

**Claim One**   Violation of First Amendment right to freedom of speech by suppressing Hale's book

<u>8.</u>   Hale repeats and realleges para. 1-7 as if fully stated herein.

<u>9.</u>   Hale's book, <u>The Triumph of Life:  An Assault Upon the Values of the Current Society</u>, is a work of naturalist racialist <u>philosophy</u> and is thus purely and totally within his constitutional rights to write and publish.  Nevertheless, Collis, CTU, and BOP will not allow its chapters to leave the CMU, falsely claiming that it constitutes "Creativity" and that they have the right to suppress it accordingly.

<u>10.</u>   In any event, the BOP lacks any sort of legitimate penological interest in the suppression of Hale's book for the following reasons:  1) the book expresses mere philosophical <u>opinion</u> and in no wise advocates any sort of imminent violence or violations of law which may be censorable by government (see <u>Brandenburg v. Ohio</u>, 395 US 444 (1969); 2) the personal views of Hale in book form--whether they align with that of Creativity or not--do not fall under any

4

lawful ban of Creativity even were such a lawful ban to exist at the CMU; 3) there is no reason to believe that anybody in the outside world would read Hale's words and take it upon himself or herself to commit a violation of law since there is no evidence that anybody has ever done that after reading his writings before, the BOP thus having no reasonable expectation that Hale's book would incite any sort of law violation; and 4) on its face, the BOP lacks a legitimate penological interest in the prevention of lawful philosophical opinion <u>leaving</u> a prison as opposed to <u>entering</u> a prison, the BOP having no legitimate concern about the public's reception of a mere philosophical literary work in the here and now or in the future. In sum, we are talking about the mere expression of abstract philosophical opinion here and the BOP has no legitimate penological interest in the suppression of such expression, especially since it has nothing to do with the BOP or the orderly running of its institutions. Many prisoners have published lawful literary works from prison--including Hale--and that speech is <u>protected</u>, quite simply.

<u>11</u>. By rejecting and refusing to allow Hale's book chapters to leave the CMU, Collis directly, intentionally, and personally ordered that action. The CTU and the BOP are likewise responsible since he is an agent of and acts on their behalf.

<u>12</u>. Collis, CTU, and BOP have engaged in the aforesaid conduct even though Hale deliberately and specifically informed Collis via email--in an effort to make this litigation unnecessary--that his book falls under more than 40 year old Supreme Court precedent, namely that of <u>Procunier v. Martinez</u>, 416 US 413-418 (1974), which held that the mere expression of racial views--even if inflammatory--cannot be censored or suppressed by prison officials. (<u>Martinez</u> was specifically affirmed as to <u>outgoing</u> mail in <u>Thornburgh v. Abbott</u>, 490 US 401, 411-412 (1989).) Nevertheless, Collis has persisted in his conduct thus evincing a deliberate intent to violate the law. Therefore Collis is not

5

entitled to qualified immunity.

WHEREFORE, Hale prays for judgment in his favor on this Claim <u>One</u>.

<u>Claim Two</u>   Violation of First Amendment freedom of speech by suppressing articles written by Hale

<u>13</u>. Hale repeats and realleges para. 1-12 as if fully stated herein.

<u>14</u>. Hale would like to be able to write articles about current affairs and other topics likewise and send those articles to the outside world. Unfortunately though, on every occasion in which he has tried to do so since becoming a prisoner at CMU in July 2020, Collis, CTU, and BOP have rejected and refused to send the article in question out.

<u>15</u>. This is the case even though the articles in question were wholly lawful and otherwise in compliance with any and all prison rules, Collis, CTU, and the BOP specifically wishing to suppress Hale's lawful <u>speech</u> with their actions, the Defendants having no legitimate penological interest in doing so. Hale said nothing within the articles which would cause a reasonable prison official to believe that the thoughts expressed may be lawfully suppressed, nor was there anything "wrong" with the articles otherwise. Collis, CTU, and BOP simply desire to shut down Hale's speech for its own sake, in violation of the law. Hale expressed facts and opinions and nothing more.

<u>16</u>. Since the BOP has no legitimate interest in the expression of mere facts and opinion of its prisoners directed at the outside world, it has no legitimate interest in the suppression of the articles which Hale writes, including the ones which Collis, CTU, and the BOP have suppressed at the CMU. Whether Collis, CTU, or BOP like Hale's articles or not, they are required by law to send them out.

<u>17</u>. As with his book, Hale informed Collis, CTU, and the BOP about the illegality of their actions regarding his articles in an effort to avoid this litigation--providing the pertinent case law in the process--but alas, they have

persisted in their conduct. Therefore qualified immunity is unavailable to Collis in this case.

18. For the same reasons that the BOP lacks a legitimate penological interest in suppressing Hale's book (see again para. 10), the BOP lacks a legitimate penological interest in suppressing his articles. So long as Hale does not advocate or encourage any sort of law violation--something which Hale has never done within his communications during his entire 18 year tenure as a federal prisoner--the BOP has no legitimate penological interest in suppressing same.

WHEREFORE, Hale prays for judgment in his favor on this Claim Two.

**Claim Three** Violation of First Amendment free exercise of religion

19. Hale repeats and realleges para. 1-7 above as if fully stated herein.

20. Hale has been a sincere believer in the Creativity religion (a "Creator") since he first read the Bible of that faith, Nature's Eternal Religion, in 1990. As the title of that book would indicate, Creativity is a religion of Nature, Nature serving for Creators the same role as "God" does in theistic religions. Hale's belief in Nature is thus religious within his own scheme of things, Creativity functioning totally as a religion within his life. He practices its precepts daily--at least within his heart--to the exclusion of all other faiths. Thus Creativity is a religion under Supreme Court and Seventh Circuit law. See Welsh v. U.S., 398 U.S. 333, 339 (1970); Redmond v. GAF, 574 F. 2d 897, 901 note 12 (7th Cir. 1978); Kaufman v. McCaughtry, 419 F. 3d 678, 681-682 (7th Cir. 2005); and Peterson v. Wilmur Communications, Inc., 205 F. Supp. 2d 1014, 1018-1019 and 1022.(E.D. Wisc. 2002).

21. Nevertheless, shortly after arriving at CMU in July 2020, Collis, CTU, and BOP began rejecting all of Hale's mail which in any way referred to Creativity, the Bibles of that Faith, or anybody's belief in same. Further, even when Hale's mail has nothing whatever to do with Creativity, Collis, CTU,

7

and BOP still reject that mail under the false claim that it does. (It is believed that dozens--and perhaps hundreds--of pieces of mail have been rejected at this juncture.) Hale's free exercise of religion within his correspondence has thus been totally annihilated by the Defendants in this case.

22. The Defendants have persisted in this conduct even though Hale specifically informed them, shortly after that conduct began in 2020, of its illegality pursuant to the case law described above. Thus Collis, CTU, and BOP were and are entirely aware of their illegal conduct and yet have chosen to partake in it all the same. Hence the defense of qualified immunity is unavailable to Collis in this case.

23. The BOP lacks any sort of legitimate penological interest in the suppression of Hale's Creativity religious mail for the following reasons: 1) the BOP lacks any sort of legitimate penological interest in the suppression of mere religious belief or declarations of belief in same, 2) beliefs themselves do not cause anybody to behave in an illegal or unlawful manner thus giving rise to a legitimate penological concern, 3) there is no reason to believe that Hale's discussion of his Creativity religion or Church would give rise to any sort of law violations, that having never occurred since his becoming a federal prisoner more than 18 years ago, and 4) religious discrimination-- which is blatantly and unambiguously what we have here--is itself "illegitimate."

24. In fact, Defendant BOP has labeled the entire Church of the Creator--and all prisoners who practice its Creativity religion--a "security threat group" within its facilities, treating Creators like gang members as it were, this conduct flying in the face of fundamental constitutional guarantees. The BOP has done this even though there is no evidence that Creators have ever acted together as a "group" to commit an illegal act. Thus Creators have been singled out for their faith alone and treated adversely on that basis. For example,

Hale has been given several prison infractions for "gang activity" the past several years for <u>simply expressing his adherence to his Creativity faith</u> in one form or fashion within his communications, this showing just how depraved the Defendants are in this case. (Can anyone imagine a Christian being punished for "gang activity" for merely expressing his love for Christ?)

<u>25</u>. By refusing to respect and honor the legal rights of those of its prisoners who adhere to the Creativity religion, Defendant BOP has likewise failed to provide Hale with his Creativity-mandated religious diet of raw fruits, vegetables, nuts, seeds, or grains. This is the case even though it has a pattern and practice of providing Jews, Muslims, and others with meals which comport with <u>their</u> respective religious beliefs.

<u>26</u>. Defendant BOP lacks any sort of legitimate penological interest in providing Jews, Muslims, and others with their respective religious diets while denying Creators <u>their</u> religious diet, especially in light of the following facts: 1) no processing or cooking of Creativity religious meals is necessary or even allowed, saving the BOP much time, effort, and money accordingly, 2) raw plant food can be acquired by the BOP significantly more cheaply on the open market than what is required to fulfill Jewish and Muslim dietary needs, and 3) granting some prisoners their religiously mandated diets while denying others causes jealousy, resentment, and hatred amongst its un-accomodated prison population which is hardly a legitimate penological interest of the BOP.

WHEREFORE, Hale prays for judgment in his favor on this Claim <u>Three</u>.

**Claim Four**  Violation of Religious Freedom Restoration Act ("RFRA"), 42 USC sec. 2000bb-1

<u>27</u>. Hale repeats and realleges para. 1-7 and 19-26 above as if fully stated herein.

<u>28</u>. By preventing Hale from discussing or alluding to Creativity in any way

9

within his correspondence--including his proselytizing to others--the Defendants have substantially burdened the free exercise of his religion, especially since he has a religious duty to win over others to his faith in the outside world and maintain his particular ministry. Conversely, the Defendants lack a compelling interest in the suppression of Hale's Creativity-themed correspondence for the following reasons: 1) the Creativity religion itself expressly disdains any sort of illegal conduct, seeking the change of hearts through peaceful means, 2) Hale has made his own personal committment to peaceful conduct overwhelmingly clear within his correspondence throughout his imprisonment, and 3) no religion "causes" anybody to do anything, each individual being responsible for his or her own actions; hence any blanket ban on "Creativity" is excessively broad and is not tailored to any compelling interest of the BOP which could otherwise exist. The mere controversial nature of a religion is insufficient to ban it altogether from within a prisoner's correspondence. Religion, by its very nature, is "controversial" and yet is protected by the Constitution of the United States all the same.

   WHEREFORE, Hale prays for judgment in his favor on this Claim <u>Four</u>.

<b><u>Claim Five</u></b>   Violation of First Amendment freedom of speech regarding Hale's mail
<u>29</u>.  Hale repeats and realleges para. 1-7 and 19-23 as if fully stated herein.
<u>30</u>.  However, even when Hale's correspondence has nothing whatever to do with Creativity, the Defendants routinely reject it on Creativity grounds anyway, their doing so purely in effort to cause him psychological and other grief and provide themselves amusement at his expense. They are perfectly aware that the mail in question does not fall under their (illegal) Creativity ban but use the ban to "justify" their repeated rejections of his non-Creativity correspondence all the same. Thus, even though Hale has abided by the (illegal) ban on his Creativity correspondence, the Defendants deliberately falsify the true nature of his correspondence so that they can continue rejecting it. This goes to show

the insincerity of the Defendants in this case: they do not really believe that Hale's correspondence poses a threat to anyone or anything, or that Hale's exercise of his religious liberties within his correspondence is a danger of any kind to the community; rather, Creativity is merely an overarching excuse by the Defendants to suppress Hale's participation in the public issues of our time. They don't like what he stands for, quite simply, and use "Creativity" to shut him up.

31. In light of para. 30 above, qualified immunity is unavailable to Collis on this claim, being that qualified immunity requires a <u>sincere</u> effort by law enforcement to obey the law, something which is not present here. On the contrary, Collis is <u>knowingly</u> violating the law here by rejecting non-Creativity, non-objectionable correspondence on false grounds with the specific intent that Hale's First Amendment freedom of speech rights be destroyed. In addition, it is the specific intent of Collis, CTU, and BOP that Hale be goaded into violence by virtue of this outrageous conduct towards his person, their seeking to obtain supposed, after-the-fact justification for the aforesaid illegal conduct.

32. In fact, since his arrival at USP Marion, the BOP has lacked a legitimate penological interest in rejecting literally <u>any</u> of Hale's outgoing mail which it has rejected thus far and that is so for the following reasons: 1) the mail in question is protected by the holdings of <u>Procunier v. Martinez</u>, 416 US 413-418 (1974), <u>Thornburgh v. Abbott</u>, 490 US 401, 411-412 (1989), and <u>Brandenburg v. Ohio</u>, 395 US 444 (1969), as all of his outgoing mail contains his mere opinions on racial matters and other topics without any sort of advocacy of imminent lawless action or disruption within the outside world and 2) the BOP does not have a "legitimate penological interest" in the suppression of lawful points of view expressed towards the outside world of any sort. Each and every letter which Hale has mailed while a prisoner at

11

USP Marion has been within his legal rights as a prisoner and American citizen to mail, without exception.

<u>33</u>.   The Defendants in this case, however, believe that they have no obligation to obey the law and have behaved accordingly.

WHEREFORE, Hale prays for judgment on this Claim <u>Five</u>.

### REQUEST FOR RELIEF

Hale requests injunctive relief, said injunction ordering the Defendants to do as follows:

1) end their pattern and practice of rejecting Hale's correspondence on the grounds that it has something to do with his Church and Creativity religious faith, as well as their pattern and practice of denying him his Creativity religious diet

2) end their pattern and practice of disallowing Hale's literary works and articles from leaving the prison, and

3) otherwise cease <u>all</u> rejections of his outgoing mail unless that outgoing mail actually <u>threatens</u> imminent illegal or disruptive activity unprotected by United States Supreme Court precedent as cited above.

In addition, suing Defendant Collis in his individual capacity, Hale requests compensatory and punitive damages from Collis in the sum of **<u>five million dollars</u>**.

### Declaration

I swear under penalty of perjury under the laws of the United States that all of the foregoing is true and correct according to my personal knowledge and belief.

*Matthew Hale*
Matthew Hale, pro se
May 17, 2021

Matthew Hale #15177-424
USP Marion CMU
P.O. Box 1000
Marion, IL  62959