**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

MATTHEW HALE,

     Plaintiff,

         v.

MICHAEL COLLIS, *et al.*,

     Defendants.

Civil Action No. 21-1469 (JEB)

---

## MEMORANDUM OPINION

*Pro se* Plaintiff Matthew Hale is a federal prisoner serving a 40-year sentence for soliciting the murder of a federal judge and obstructing justice.  United States v. Hale, 448 F.3d 971, 974 (7th Cir. 2006) (Hale I).  He is also, in the words of his Complaint, a "philosopher, ordained minister . . . , and accomplished author."  ECF No. 1 (Compl.), ¶ 1.  It is perhaps inevitable that prison's restrictions will crimp an inmate's free pursuit of philosophy, religion, and literary glory.  That is especially true for Hale since the creed he seeks to preach and practice is that of the World Church of the Creator — also known as "Creativity" — "a white supremacist organization" that the Bureau of Prisons has restricted "because inmates following its tenets have engaged in acts of violence," including murdering fellow prisoners and starting race riots.  See ECF No. 12 (Def. MTD) at 2; Hale v. Fed. Bureau of Prisons, 759 Fed. App'x 741, 743 (10th Cir. 2019) (Hale II).

Hale's place at the intersection of white-supremacist violence, purported religious practice, and literary ambition has produced this lawsuit, in which he brings a raft of religious and free-speech claims against BOP, BOP's Counter Terrorism Unit, and the CTU analyst who

1

implements many of its policies against him, Michael Collis.  See Compl., ¶¶ 1–3.  Defendants now move to dismiss.

The Court will grant the Motion in part and deny it in part.  As explained below, claim preclusion bars Hale's religion causes of action, but his free-speech claims may proceed — although only against BOP itself.

## I.    Background

Before setting out the backdrop of our case, the Court believes that a brief tour through Hale's litigation history may help inform the reader.

### A.  Prior Cases

This is the latest episode in a series of cases arising from Plaintiff's involvement with Creativity.  TE-TA-MA Truth Found. — Fam. of URI, Inc. v. World Church of Creator, 297 F.3d 662, 664 (7th Cir. 2002).  This trail — which has featured a murder conspiracy and a controversy over what counts as a religion — started, strangely enough, with a squabble over trademarks.  In 2002, the Seventh Circuit ruled that Creativity, which Hale was then leading as its Pontifex Maximus, had infringed on the trademark of another organization.  TE-TA-MA, 297 F.3d at 667.  A federal district court duly ordered Creativity to comply with the judgment.  Hale I, 448 F.3d at 975.  Instead, Hale tried to have the judge murdered.  Id. at 977–79.  The plot was foiled, and Plaintiff was once again brought to court — this time as a criminal defendant — where he was sentenced in 2005 to 40 years in prison.  Id. at 974.

Even within the walls of a maximum-security prison, however, Hale and Creativity continued to cause problems.  Prisoners following Creativity murdered fellow inmates and started race riots, while Plaintiff sent out a press release that was "plainly designed to incite [his] followers and supporters in the Creativity Movement and other white supremacist groups" to

target a federal magistrate judge.  Hale II, 759 F. App'x at 743–44, 744 n.1 (internal quotation and citation omitted).  In response, BOP designated Creativity a security threat group (STG).  Id. at 743.  The Bureau applies the STG label to organized groups that threaten to cause violence inside and outside prison — such as the Latin Kings, Abdolrazek v. N.J. Dep't of Corr., 2010 WL 431313, at *1 (N.J. Super. Ct. App. Div. Feb. 9, 2010), the Aryan Brotherhood, Koch v. Lewis, 96 F. Supp. 2d 949, 955 (D. Ariz. 2000), and, now, Creativity.

BOP has found that it cannot safely judge whether any particular communication about an STG might cause violence.  Hale II, 759 F. App'x at 749.  Because STGs are complicated and shifting networks, BOP struggles to stay abreast of their plans, and, as it scans for threats in inmates' often cryptic messages about STGs, it might fail to connect the dots until their through-line has already ended in a hit or a deadly fight between rival groups.  Id.  To tamp down this risk, BOP imposes blanket restrictions on prisoners' communications about STGs.  Id.

According to the Complaint, which the Court must construe as true at this stage, Hale has thus long been forbidden from sending or receiving any letters about Creativity.  Id.; Compl., ¶¶ 21, 28.  These restrictions particularly chafe him because he considers Creativity his religion.  See Compl., ¶ 20.  Not being allowed to, say, write a letter about the Latin Kings might be an inconvenience.  But forbidding Hale from sending or receiving letters about his professed religion — including barring "proselytizing to others" when Hale believes in a "religious duty to win over others to [the] faith in the outside world and maintain his particular ministry" — is an intrusion, Hale feels, into his relationship with the very ordering of the world.  Id., ¶¶ 20, 28.  One conflict between Hale's creed and BOP's policies thus arose because BOP treated Creators differently from other prisoners when they tried to communicate with the outside world.

Another controversy stemmed from BOP's treating Creators the same as everyone else when they sat down to meals.  Creativity mandates a diet of "raw fruits, vegetables, nuts, seeds, or grains."  Compl., ¶ 25.  While BOP accommodates the dietary restrictions of many religious prisoners — like those who keep Kosher or Halal — it apparently considers Creativity less a religion and more a prison gang, and so it has long refused to serve Hale his Creativity-mandated diet.  Hale II, 759 Fed. App'x at 744; Compl., ¶¶ 25–26.

Fed up, Hale sued BOP in 2014 for (1) rejecting all his correspondence that mentioned Creativity and (2) refusing to accommodate his Creativity-based dietary scruples, along with other grievances not relevant here.  Hale v. Fed. Bureau of Prisons, No. 14-245, 2018 WL 1535508, at *2 (D. Colo. Mar. 28, 2018).  The district court ruled against Hale on every count, id. at *17, and the Tenth Circuit affirmed.  Hale II, 759 Fed. App'x at 754.

B.  This Case

Plaintiff has since been transferred to a Communications Management Unit (CMU) in the United States Penitentiary in Marion, Illinois.  See Def. MTD at 3 & 3 n.2.  CMUs allow BOP to more intensely monitor communications between the outside world and prisoners whose messages might be dangerous — for instance, those who were convicted of terrorism-related crimes; those who have, from inside a prison, furthered crimes outside its walls; or those whose communications with people outside prison create threats anywhere.  Aref v. Lynch, 833 F.3d 242, 257 (D.C. Cir. 2016); 28 C.F.R. § 540.201 (enumerating criteria for assigning prisoner to CMU).  Whenever a prisoner in a CMU sends or receives a letter, email, or phone call, an intelligence analyst with BOP's Counter Terrorism Unit is reading or listening.  See Def. MTD at 4.  When the analyst believes that a communication "would jeopardize . . . safety" inside the

prison or in the outside world, he recommends that the on-site warden block it.  Id.  For Hale, that analyst is Defendant Michael Collis.  See Compl., ¶ 2.

According to the Complaint, USP Marion has continued to reject all letters to or from Hale that mention Creativity.  Id., ¶¶ 21, 28.  It has also continued to serve him meals that violate Creativity's commandments.  Id., ¶¶ 25–26.  And further grievances have piled up.  Hale has written a new book that, he alleges, does not refer to Creativity — but BOP has nonetheless refused to let him send the draft from the prison to a publisher.  Id., ¶¶ 9–12.  He has also written several "articles about current affairs" that BOP has likewise blocked from leaving the CMU. Id., ¶¶ 14–18.

These purported transgressions have led, at last, to the case currently before this Court. Hale is suing BOP, the CTU, and Collis in his personal capacity, arguing that (1) Defendants' rejection of all correspondence mentioning Creativity violates his First Amendment rights to free exercise of religion and free speech, as well as his rights under the Religious Freedom Restoration Act; (2) Defendants' refusal to serve him Creativity-compliant meals violates his rights under the First Amendment's Free Exercise Clause and RFRA; (3) Defendants have, on pretextual grounds, rejected his correspondence that has nothing to do with Creativity, violating his First Amendment right to free speech; and (4) Defendants' refusal to allow him to publish his book and articles violates his First Amendment speech rights.  Id., ¶¶ 8–33.  Hale's Complaint splits these causes of action into five counts.  As relief from these purported transgressions, he is seeking $5 million in damages from Collis and injunctive relief from all three Defendants.  Id. at 12.  Defendants now move to dismiss under multiple subsections of Federal Rule of Civil Procedure 12(b).

## II.     Legal Standard

The Court sets out the standard for Rule 12(b)(6) here and then discusses the other

standards in the appropriate analytical sections.  Under this Rule, a court must dismiss a suit

when the complaint "fail[s] to state a claim upon which relief can be granted."  In evaluating a

motion to dismiss, the court must "treat the complaint's factual allegations as true and must grant

plaintiff the benefit of all inferences that can be derived from the facts alleged."  Sparrow v.

United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation

marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A court need not accept as

true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported

by the facts set forth in the complaint.  Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006)

(quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Although "detailed factual allegations"

are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S.

544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to

state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (internal quotation

omitted).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and

unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above

the speculative level."  Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232,

236 (1974)).

## III.    Analysis

Hale's claims against BOP divide into two categories: religious exercise (Creativity

correspondence, Creativity diet) and free speech (non-Creativity correspondence, book, articles).

These sets of claims meet different fates.  The Court first explains why Hale's religion causes of

action are precluded by his earlier challenge to the same policies in the Tenth Circuit.  It then

discusses why his speech claims may proceed against BOP.  Last, it addresses the viability of these claims against Collis and the CTU.

    A.  <u>Religious Exercise</u>

Defendants principally argue that Hale's religious-exercise challenge is doomed by issue preclusion.  <u>See</u> Def. MTD at 13–16.  They point out that the Tenth Circuit ruled — in his prior challenge to BOP's policies toward his Creativity correspondence and diet — that Creativity is not a religion but rather a secular political program.  <u>Hale II</u>, 759 Fed. App'x at 746–49.  That prior judgment, Defendants maintain, requires this Court to accept that Hale's claims are not religious and that he thus cannot state a claim under the Free Exercise Clause or RFRA.  <u>See</u> Def. MTD at 13–16.  While that argument is intriguing, it is Defendants' secondary argument on <u>claim</u> preclusion — sometimes mixed into arguments about issue preclusion, <u>id.</u> at 15–16, sometimes raised independently, <u>see</u> ECF No. 26 (Def. Reply) at 4–5 — that ultimately proves persuasive.  <u>Cf.</u> <u>Nuckols v. Fed. Bureau of Prisons</u>, 578 F. Supp. 2d 79, 81 & n.1 (D.D.C. 2008) (defendant moved to dismiss for issue preclusion; court instead held that plaintiff's "claim [was] barred by the doctrine of claim preclusion" and so dismissed "pursuant to the Court's authority <i>sua sponte</i> . . . to apply the doctrine of claim preclusion").

Claim preclusion ensures that once a plaintiff has fully litigated his claim, he cannot keep coming back to court with the same claim against the same party hoping to get a better result.  Specifically, the doctrine bars a second suit by the same plaintiff over (1) the same claim (2) against the same defendants or their privies (3) that has already received a valid, final judgment on the merits.  <u>McIntyre v. Fulwood</u>, 892 F. Supp. 2d 209, 214 (D.D.C. 2012).  Neither party disputes that the Tenth Circuit rendered a valid, final judgment on the merits of the relevant

issues in <u>Hale II</u>.  <u>See</u> 759 Fed. App'x 741.  The question is whether Hale is bringing the same claim against the same party and its privies here.

1. <i>Same Claim</i>

Claims are identical if they "share the same nucleus of facts."  <u>Drake v. FAA</u>, 291 F.3d 59, 66 (D.C. Cir. 2002) (internal quotation and citation omitted).  Pulling the doctrine down to the level of this case, if a plaintiff challenges a policy, loses, and re-challenges its continued application, he has not brought a new claim, and claim preclusion will bar his suit.  <u>Peugeot Motors of Am., Inc. v. E. Auto Distribs., Inc.</u>, 892 F.2d 355, 359 (4th Cir. 1989); <u>see also Harrison v. Norton</u>, 429 F. Supp. 2d 83, 90 (D.D.C. 2006) (because plaintiff had lost challenge to 1997 denial of her application for Certificate of Degree of Indian Blood, claim preclusion barred challenge to 2005 summary rejection of her second application for CDIB); <u>Sczygelski v. U.S. Customs & Border Patrol Agency</u>, 48 F. Supp. 3d 80, 85–86 (D.D.C. 2014) (because plaintiff had lost challenge to his firing by CBP, claim preclusion barred challenge to CBP's refusal to re-hire him).  Similarly, if a plaintiff has lost a challenge to a defendant's action that subsequently inflicts new injuries on him, those new injuries do not create new claims.  <u>Shepstock v. Fenty</u>, 707 F.3d 326, 334 (D.C. Cir. 2013) (because plaintiffs had lost challenge to closure of homeless shelter, claim preclusion barred another challenge based on post-judgment housing discrimination closure had caused).

Such is the fate of Hale's religion causes of action.  His prior and current claims emerge from the same nucleus of facts: in <u>Hale II</u>, Plaintiff challenged BOP's policies of rejecting his Creativity correspondence and of serving him standard meals.  <u>See</u> 759 Fed. App'x at 746, 753.  Here, he assails those same policies.  <u>See</u> Compl., ¶¶ 19–26.  Hale does not even allege that the relevant facts have changed.  He still believes in Creativity, which is still an STG, and that is still

8

the reason the same Defendant is implementing its same policy toward the movement, with the same application to Hale's correspondence and meals.  Cf. Harrison, 429 F. Supp. 2d at 90 ("Plaintiff's 'new' application is insufficient to overcome *res judicata* where Plaintiff is still challenging the same factual circumstances . . . .").

Comparing Hale's grievances in the two suits shows that while the years and facilities have changed, the underlying facts have not.  Hale II arose because "Mr. Hale is a minister in the Church of the Creator . . . .  The BOP has designated Creativity a security threat group . . . . Accordingly, the BOP has placed restrictions on Mr. Hale impacting his participation in Creativity.  In particular, the BOP imposed mail restrictions . . . .  The BOP also denied Mr. Hale's requests for a special diet . . . ."  Hale II, 759 Fed. App'x at 743–44 (internal quotations omitted).  In this case, Hale alleges, "Matthew Hale . . . is a . . . minister in the Church of the Creator . . . .  BOP has labeled the entire Church of the Creator . . . a 'security threat group,'" Compl., ¶¶ 1, 24, and "BOP began rejecting all of Hale's mail which in any way referred to Creativity . . . .  BOP has likewise failed to provide Hale with his Creativity-mandated religious diet . . . ."  Id., ¶¶ 21, 25.

It would be one thing if Hale's earlier suit had challenged specific, discrete actions — say, arguing that a particular letter was capriciously rejected in May 2013 — separate from those he objects to here.  But it did not.  Instead, his prior action targeted BOP's policy toward his correspondence and meals in general.  An objection to the continued application of those policies is not a new claim.  Each rejected letter and each offending meal might injure Hale afresh, but new injuries from a policy he has already litigated do not create new claims.  Shepstock, 707 F.3d at 334.

2.   *Same Parties or Their Privies*

The next part of the analysis is even simpler.  As both the prior suit and this one name BOP as a defendant, this prong is satisfied as to the Bureau.  In addition, the CTU, as a sub-unit of BOP, is its privy.

So is Collis.  A party in a subsequent lawsuit is in privity with a party in a prior suit if the subsequent party's "interests [were] represented" by the prior party.  Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 329 n.19 (1955) (internal quotation and citation omitted); see also Jefferson Sch. of Soc. Sci. v. Subversive Activities Control Bd., 331 F.2d 76, 83 (D.C. Cir. 1963) (holding that two parties are in privity if they are "so identified in interest . . . that [they] represent[] precisely the same legal right in respect to the subject matter involved").  As a result, courts in this district have often held that government employees sued in their personal capacity for official acts are in privity with the government.  Wilson v. Fullwood, 772 F. Supp. 2d 246, 263 (D.D.C. 2011) ("[T]he government, its officers, and its agencies are regarded as being in privity for [claim-preclusive] purposes," and so parole commissioners sued in their personal capacities were in privity with the Parole Commission.) (alterations in original); Barroca v. Hurwitz, 342 F. Supp. 3d 178, 196 (D.D.C. 2018) (BOP officials sued in personal capacities were in privity with United States government).  Likewise, when it defended its policies against Hale's claims, BOP was surely defending the interests of its employees who implement those policies.  That makes Collis its privy, and the religion claims are thus precluded.

3.   *Hale's Objections*

Hale counters with three arguments, none of which hits the mark.  First, he contends that "the free exercise of religion is an inalienable right possessed by every person; it is, therefore, unamenable to 'issue preclusion'" — or, presumably, claim preclusion.  See ECF No. 20 (Pl.

Opp.) at 9.  "In other words, a person has a constitutional <u>right</u> to profess the religious faith of his choosing in this country regardless of whether he has lost a court case or not."  <u>Id.</u>

Strong words, zero citations.  In fact, while federal courts must afford plaintiffs a full and fair opportunity to assert their constitutional rights, they may then insist that litigants abide by the judgment.  <u>Smith v. District of Columbia</u>, 629 F. Supp. 2d 53, 58 (D.D.C. 2009) (plaintiff's "constitutional cause of action [is] precluded by the prior . . . judgment"); <u>Arakawa v. Reagan</u>, 666 F. Supp. 254, 261 (D.D.C. 1987) (holding that claim preclusion barred claims under First and Fifth Amendments); <u>Drake v. Cappelle</u>, No. 02-1049, 2005 WL 670755, at *11 (D.D.C. 2005) (same for claims under Fourth and Fifth Amendments); <u>Richardson v. Sauls</u>, 319 F. Supp. 3d 52, 58, 66 (D.D.C. 2018) (same).  There is no exception to claim preclusion for suits that plaintiffs deem particularly significant.

Second, Hale argues that "the Tenth Circuit [was] actually in clear and provable violation of Supreme Court precedent" when it ruled against his religion claims.  <u>See</u> Compl., ¶ 7; <u>see also</u> Pl. Opp. at 14–16.  In other words, this Court should not preclude because its western counterpart was wrong.  But claim preclusion bars Hale from relitigating his claim's merits.  <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").  If Plaintiff thought that the Tenth Circuit erred, his remedy was an appeal.  Indeed, he pursued that route, and the Supreme Court denied *certiorari*.  <u>Hale v. Fed. Bureau of Prisons</u>, 140 S. Ct. 196 (2019) (order denying *certiorari*).

Last, Hale points out that the Tenth Circuit rejected his religion claims using that circuit's test for what counts as a religion.  <u>See</u> Pl. Opp. at 17–18.  In other words, while Hale's prior argument was that the Tenth Circuit's doctrine is wrong, this objection posits that the Tenth

Circuit's doctrine might be different from ours — and so a Tenth Circuit decision should not preclude Hale here.

Yet claim preclusion bars a plaintiff from continuing to sue the same defendant over the same set of facts in new jurisdictions until he finds one whose law he likes. Smith v. Jenkins, 562 A.2d 610, 614 (D.C. 1989) ("If the mere transfer of a claim based upon the same transaction from the courts of one jurisdiction to those of the next, with the attendant change in governing law, were all that were required to escape claim preclusion, then virtually all bars to relitigation in a second jurisdiction would be overcome by the very change of venue, and the purposes of claim preclusion would be defeated."); see also Davis Wright & Jones v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 709 F. Supp. 196, 199 (W.D. Wash. 1989); Harmon v. Gordon, 712 F.3d 1044, 1053–56 (7th Cir. 2013). Hale cannot keep taking bites at the apple just because he thinks that he has found somewhere it might taste better.

The Court will therefore dismiss Hale's religion claims.

B. Speech

Plaintiff's free-speech claims fare better. Prisoners retain their constitutional rights while incarcerated — including First Amendment speech rights. Kimberlin v. U.S. Dep't of Just., 150 F. Supp. 2d 36, 43 ("Prison walls do not separate inhabitants from their constitutional rights.") (internal quotation and citation omitted); Levitan v. Ashcroft, 281 F.3d 1313, 1317 (D.C. Cir. 2002) ("It is well established that prisoners retain constitutional rights in prison . . . ."). But the breadth of those rights, not surprisingly, is constricted in prison, where safety demands intrusive and restrictive regulation of prisoners' lives. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989) ("[T]hese rights must be exercised with due regard for the inordinately difficult undertaking that is modern prison administration.") (internal quotation and citation omitted); Pell v. Procunier,

417 U.S. 817, 822 (1974) (explaining that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"). When a prison regulation burdens constitutional rights, it is valid if it is "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).

Accepting his allegations as true, Hale makes out a *prima facie* case under the First Amendment. He alleges that Defendants have prevented him from publishing a book and articles and rejected his correspondence "even when [it] has nothing whatever to do with Creativity." Compl., ¶¶ 9–10, 14–15, 30. Each of these claims sufficiently asserts that the federal government has restricted Hale's speech in violation of the First Amendment.

Whether the above Turner test — holding that restrictions of prisoner rights are valid if related to legitimate penological interests — is construed as an affirmative defense or as an element of Hale's *prima facie* case, the Complaint survives it. If the Turner safe harbor is properly asserted as an affirmative defense, BOP must wait for summary judgment to put forth evidence of its penological interests. If, on the other hand, it must be alleged as part of Hale's *prima facie* case, he has set forth sufficient facts to support an inference that the government lacks a legitimate penological interest in its alleged censorship. For example, Plaintiff alleges that his book does not advocate violence or illegal conduct but merely holds forth on "abstract philosophical opinion," that the articles are "about current affairs and other topics" and have innocuous contents, and that the rejected mail "does not fall under [BOP's] . . . Creativity ban." Id., ¶¶ 10, 14, 30. He also points out that he is trying to send the book and articles out of a prison rather than into one, presumably diluting BOP's penological interest in suppressing them. Id., ¶ 10. These allegations — strengthened by the rule that a *pro se* complaint must be "liberally

construed" and "held to less stringent standards than formal pleadings drafted by lawyers," Estelle v. Gamble, 429 U.S. 97, 106 (1976) — support the inference that BOP's censorship has run past what its legitimate penological interests can justify.

Defendants object that the Complaint "does not include a [sufficiently] complete accounting of the contents of the book" to prove that BOP lacks an interest in suppressing it, nor does he "account for the names and number of articles in question or address their content." Def. MTD at 20. But that position mixes up the parties' burdens at this stage of litigation. On a motion to dismiss, Hale does not need to definitively prove that the evidence tips his way; he need only clear the pleading bar. He has.

C. Defendants Collis and CTU

While Hale's free-speech claims thus survive, he can only bring them against BOP. As this section will discuss, he has not sufficiently stated a claim against Collis, and he cannot sue the CTU at all.

1. *Collis*

The Court will dismiss Collis because Hale is demanding relief from him — $5 million in damages — that is not available for his speech causes of action. Defendants eventually get around to this realization in their Motion to Dismiss, see Def. MTD at 16–17, but they first trot out two misguided arguments: that this Court lacks personal jurisdiction over Collis, id. at 10–11, and that venue is improper as to him. Id. at 11–13. Although neither of these assertions holds water, the Court must nonetheless consider them first because they are jurisdictional. It will thus briefly tackle these questions before moving to the merits.

a.   Personal Jurisdiction

Defendants argue that the Court lacks personal jurisdiction over Collis because "[t]here is no record of proper service as to [him]." Id. at 10–11.  Ordinarily, a federal court cannot exercise personal jurisdiction over a defendant who has not been served.  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."); Omni Cap. Int'l., Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987).  That includes a federal employee sued in his personal capacity for conduct within his official duties — like Collis here.  See MTD at 10 (collecting cases).  If a plaintiff filing such a suit fails to serve the employee within 90 days, the court must dismiss his complaint — unless the plaintiff shows good cause for his tardy service.  See Fed. R. Civ. P. 4(m).  One form of good cause is if a prisoner asks the U.S. Marshals Service to serve a defendant, provides it adequate information to do so, and the Marshals fail to serve him.  Sellers v. United States, 902 F.2d 598, 602 (7th Cir. 1990) ("The Marshal's failure to [serve a defendant] is automatically 'good cause' within the meaning of" the Federal Rules of Civil Procedure.).

That seems to have happened here.  Hale timely filed a request to have the Marshals serve Collis, which this Court granted.  See ECF No. 2-1 (Collis Summons) at 1; Minute Order of Aug. 12, 2021.  If they failed to serve Collis, there was nothing Plaintiff could have done about it from a prison cell in Illinois.  See Pl. Opp. at 5.  He thus had good cause for not serving Collis, and the Court cannot dismiss on that ground.

b.   Venue

The Motion to Dismiss then proceeds to the next step on the Rule 12(b) checklist: venue. The same result obtains.

As relevant here, a plaintiff can lay venue (1) under 28 U.S.C. § 1391(b)(1) in a district where any defendant resides, if all defendants reside in the same state, or (2) under § 1391(b)(2) in a district where "a substantial part of the events or omissions giving rise to the claim occurred." Defendants point out that since Collis resides in West Virginia, § 1391(b)(1) does not establish venue here. See Def. MTD at 12. Fair enough. But Defendants do not show that Hale is similarly out of luck under § 1391(b)(2).

Under this provision, multiple districts might qualify as ones where "a substantial part" of the events giving rise to the suit occurred. Showing that substantial events occurred in District A, therefore, does not rebut a contention that other substantial events occurred in District B, where venue might be proper as well. See Charles Alan Wright & Arthur R. Miller, 14D Federal Practice and Procedure § 3806 (4th ed. 2022) ("It has always been clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred."); Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992) (Section 1391(b)(2) "does not, as a general matter, require the District Court to determine the best venue.").

Here, Defendants have not shown that this district is an improper venue. They argue that because Collis is challenging rules that were applied to him in a prison in Illinois, "none of the events took place here" in D.C. See Def. MTD at 12. But that argument's premise does not clinch its conclusion. Collis's office is in our city, so it is possible — drawing all inferences in Plaintiff's favor — that he reviewed and rejected Hale's letters, book, and articles from this district. See Pl. Opp. at 7–9. At the very least, Defendants cannot disprove that Collis made key decisions in D.C. by pointing out only that Hale felt the consequences somewhere else. They have thus not rebutted the plausible inference that this district satisfies § 1391(b)(2).

Defendants make stronger arguments in their Reply.  See ECF No. 26 (Reply Brief) at 7–9.  But that does not rescue them, given that this Court may not consider arguments raised for the first time in a reply.  Battle v. Rubin, 121 F. Supp. 2d 4, 7 n.3 (D.D.C. 2000) (refusing to consider argument "[b]ecause the defendant has raised this argument only in its reply," and so "the plaintiff has not had and will not have an opportunity to respond").

c.   Bivens

The next arrow from Defendants' quiver flies a truer path.  More specifically, Hale's demand for $5 million from Collis has a significant problem: he cannot sue Collis for damages at all.  Congress has not created a general cause of action that allows plaintiffs to seek money damages from federal officials who violated their constitutional rights.  But in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court famously created a narrow cause of action allowing a plaintiff to seek a damages remedy against federal employees who violated his Fourth Amendment right against unreasonable searches and seizures.  Plaintiffs have since sought to extend Bivens — sometimes successfully, usually not — asking courts to create damages remedies for violations of their constitutional rights even when a statute does not authorize that remedy.  One of those plaintiffs is Hale.  Here, he asks this Court to create a damages remedy for Collis's alleged violation of his First Amendment rights to free speech and free exercise.  Because, as discussed above, claim preclusion bars Plaintiff's religion claims, he can seek a Bivens remedy for only his speech claims.  It is not available.

The mere existence of a constitutional right does not guarantee a Bivens damages remedy to enforce it.  Wilkie v. Robbins, 551 U.S. 537, 550 (2007).  Instead, courts must make individual judgments about whether a right may be enforced through the specific means of money damages from a federal employee.  In other words, they must decide whether the

judiciary should create this remedy when Congress has not.  In every <u>Bivens</u> case since 1980, the Supreme Court has answered with increasing conviction: no.  <u>See</u> <u>Egbert v. Boule</u>, 142 S. Ct. 1793, 1802–03 (2022); <u>see also</u> <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 742 (2020) ("[A] federal court's authority to recognize a damages remedy must rest at bottom on a statute enacted by Congress, . . . and no statute expressly creates a <u>Bivens</u> remedy.").  These repeated rebuffs have "made clear that expanding the <u>Bivens</u> remedy is now a 'disfavored' judicial activity." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1857 (2017).

Courts decide whether to create a <u>Bivens</u> remedy using a two-part test.  <u>Hernandez</u>, 140 S. Ct. at 743.  First, is the current claim "different in a meaningful way" from previous ones that were allowed to seek <u>Bivens</u> remedies?  <u>Abbasi</u>, 137 S. Ct. at 1859.  If so, are there any "special factors counseling hesitation" about judicially creating a remedy that Congress has chosen not to?  <u>Bivens</u>, 403 U.S. at 396.  The Court looks at each inquiry in turn.

i.   Meaningful Difference

Hale's claim is unlike any for which a <u>Bivens</u> remedy has been recognized in the past.  In fact, even a narrow gap between a prior case that successfully argued for <u>Bivens</u> and a new one that tries to — for example, a violation of a different right under the same amendment or a violation of the same right by a different kind of defendant — is wide enough to contain a meaningful difference.  <u>Compare</u> <u>Bivens</u>, 403 U.S. 388 (creating <u>Bivens</u> remedy for violation of Fourth Amendment right against unreasonable search and seizure), <u>with</u> <u>Egbert</u>, 142 S. Ct. 1793 (refusing <u>Bivens</u> remedy for violation of Fourth Amendment right against excessive force); <u>compare</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980) (creating <u>Bivens</u> remedy for violation of Eighth Amendment right against cruel and unusual punishment by federal prison), <u>with</u> <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61 (2001) (refusing <u>Bivens</u> remedy for violation of same right by

private prison); <u>also see Abbasi</u>, 137 S. Ct. at 1864 ("[E]ven a modest extension is still an extension.").

That said, the gap between Hale's <u>Bivens</u> claim and already-recognized ones yawns wide. "The Supreme Court has never implied a <u>Bivens</u> action under any clause of the First Amendment." <u>Lopez-Arroyo v. United States</u>, No. 18-672, 2018 WL 3770051, at *5 (E.D. Cal. Aug. 8, 2018); <u>see also Egbert</u>, 142 S. Ct. at 1807–09 (rejecting <u>Bivens</u> for First Amendment claim); <u>Bush v. Lucas</u>, 462 U.S. 367, 390 (1983) (same). Nor have First Amendment <u>Bivens</u> claims fared better in the D.C. Circuit. <u>See Spagnola v. Mathis</u>, 859 F.2d 223, 230 (D.C. Cir. 1988) (<i>en banc</i>); <u>Wilson v. Libby</u>, 535 F.3d 697, 713 (D.C. Cir. 2008). It is thus an understatement to say that Plaintiff's claim is meaningfully different from recognized ones.

ii.    Factors Counseling Hesitation

The Court therefore proceeds to step two: are there any special factors counseling hesitation before creating a damages remedy that Congress has not? This inquiry is extremely skeptical of judges' competence to evaluate the tradeoffs of such a remedy and extremely deferential to Congress. If there is "even a single reason to pause" before creating a <u>Bivens</u> remedy — "<u>any</u> rational reason (even one)" to think that "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed" — then courts refuse to allow <u>Bivens</u>. <u>Egbert</u>, 142 S. Ct. at 1803, 1805 (internal quotations and citations omitted); <u>see also Hernandez</u>, 140 S. Ct. at 743 ("[I]f we have reason to pause before applying <u>Bivens</u> in a new context or to a new class of defendants — we reject the request.").

One reason to worry is how the constant threat of multi-million-dollar damages suits will affect federal employees trying to do their jobs. "[P]ermitting damages suits against government

officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." Anderson v. Creighton, 483 U.S. 635, 638 (1987); see also Schweiker v. Chilicky, 487 U.S. 412, 425 (1988) ("The prospect of personal liability for official acts . . . would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established.").  Even if a court is uncertain about a damage remedy's effects, that uncertainty alone forecloses Bivens.  Egbert, 142 S. Ct. at 1803–04.

Collis's position as he filters Hale's mail offers a canonical example of this fear. Scanning inmates' letters for hidden threats, weighing whether he can safely let messages pass into and out of prison, and implementing his employer's policies about STGs constitute a hard enough job.  Congress might rationally worry that Collis's position would become impossible if he became personally liable for mistakes, trapped between enabling a murder if he rejects one letter too few and paying $5 million if he rejects one too many.  At the very least, the tradeoff between prisoner safety and prisoner rights is a policy judgment.  And it is perfectly rational to believe that such policy calls belong with Congress, not judges.  Wilkie, 551 U.S. at 562 ("Congress is in a far better position than a court to evaluate the impact of a new species of litigation against those who act on the public's behalf.  And Congress can tailor any remedy to the problem perceived, thus lessening the risk of raising a tide of suits threatening legitimate initiative on the part of the Government's employees.") (internal quotation marks and citation omitted).  The Court therefore declines to authorize a Bivens remedy for Hale's First Amendment claims.

d.   RFRA

Hale rejoins that even if Bivens is unavailable to him, he should be allowed to seek

damages from Collis under RFRA.  See Pl. Opp. at 4–5.  He might be right under different facts.

As discussed above, plaintiffs who want damages from a federal employee must resort to Bivens

if Congress has not created a damages remedy.  But Congress has created such a remedy in

RFRA for federal violations of religious freedom.  Tanzin v. Tanvir, 141 S. Ct. 486, 489 (2020).

Plaintiff's problem, however, is that his religion claims — as discussed above — are all barred

by claim preclusion.  RFRA is thus off the table.

As the only remedy Hale seeks from Collis is unavailable to him, the Court will dismiss

Collis from this suit.

2.   *CTU*

The Court will also dismiss Defendant CTU because it is not a suable entity.  While

Defendants never identify this problem, federal courts must consider *sua sponte* any reason to

dismiss a claim that a prisoner brings against a government entity.  See 28 U.S.C. § 1915A.

Hale's suit against the CTU runs aground on one such reason: a plaintiff cannot sue an entity that

lacks a separate legal existence.  Cf. Gonzalez v. City of New York, No. 98-6081, 1999 WL

549016, at *1 (S.D.N.Y. July 28, 1999) (District Attorney's Office "does not have a legal

existence separate from the District Attorney himself" and so cannot be sued); Blue v. District of

Columbia, 850 F. Supp. 2d 16, 22–23 (D.D.C. 2012) (holding that District of Columbia Public

Schools was not suable entity and so suit must be brought against District of Columbia itself);

see also 5 U.S.C. § 703 (authorizing suits for judicial review against "the United States, the

agency by its official title, or the appropriate officer") (emphasis added).  Since the CTU is a

sub-division of BOP, it lacks an independent legal existence and therefore cannot be sued under its own name.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss in part and deny it in part.  Collis and the CTU will be dismissed, as will the religion claims (Counts III and IV).  The speech claims (Counts I, II, and V) may proceed against BOP.  A separate Order so stating will issue this day.

_/s/_ _James E. Boasberg_
JAMES E. BOASBERG
United States District Judge

Date:  July 29, 2022