IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATTHEW HALE,

    Plaintiff,

v.

MICHAEL COLLIS, et al.

    Defendants.

Civil Action No. 21-1469 (JEB)



## VERIFIED SUPPLEMENTAL COMPLAINT

(This Supplemental Complaint picks up exactly where Hale's Verified Complaint (Doc. 1) leaves off.)

**Claim Six**   Violation of First Amendment right to freedom of speech by suppressing Hale's new book, Racism: A Reappraisal.

34. Hale repeats and realleges para. 1-33 as if fully stated herein.

35. Since arriving at the CMU, Hale has completed yet another book, this one entitled Racism: A Reappraisal. It is a work of naturalist, racialist philosophy, like Triumph of Life, but unlike The Triumph of Life is aimed exclusively at an anti-racist readership. As such, it has nothing whatever to do with his church or any sort of leadership or guidance of same. Rather, the intent of the book is to explain why racism--as Hale defines it--is morally justified, something which is totally unnecessary in the case of his fellow Creativity adherents who already subscribe to that proposition. In fact, Hale justifies the racism of all living creatures in the book, not just that of the White race of which he happens to be a member. Thus the book is for members of all races who have the willingness and ability to read it.

36. Nevertheless, when Hale attempted to mail the book out in November 2021, the BOP rejected it. When he attempted to do so again in August 2022, the BOP rejected it again, the BOP bizarrely claiming that the book is detrimental to the safety and security of the institution (USP Marion), an idea which is

ridiculous on its face since 1) Hale was trying to send it <u>out</u> of the institution and 2) the book has nothing whatever to do with the "institution" at all. Furthermore, as with <u>The Triumph of Life,</u> the BOP is falsely asserting that <u>Racism: A Reappraisal</u> has something to do with Hale's church and his (long past) leadership thereof, and that it is aimed at that "group" when, for the reasons stated in the previous paragraph, that is not even remotely the case. The whole point of the book is to change <u>anti</u>-racist opinion, not "preach to the choir" as it were, and that is why Hale decided to write the book at all. Thus the BOP has provided transparently false and absurd grounds for its suppression of the book, lacking as it does any sort of legitimate penological interest in the suppression of a non-violent racist point of view. Hence the BOP is <u>not</u> acting in good faith in this case.

<u>37.</u> To be absolutely clear, the BOP itself does not actually believe that <u>Racism: A Reappraisal</u> poses a threat to the safety or security of <u>anybody</u>, let alone USP Marion or the BOP in general. Rather, the BOP, acting through its employee Michael Collis, has the deliberate objective of simply stopping Hale's constitutionally protected opinions from reaching the public, opinions which it and he specifically disdain. In other words, the BOP is perfectly aware that Hale's book is indeed <u>constitutionally protected speech</u> which it has the legal duty to send out; it would rather knowingly violate his constitutional rights however in order to suppress his (racist) worldview from being heard. This claim then is <u>not</u> about any sincere concerns on the part of the BOP. It is about the BOP targeting views it does not like in order to destroy basic constitutional guarantees which those of <u>different</u> viewpoint can, on the other hand, safely take for granted. Hale's books are not targeted because the BOP sincerely believes that a threat of violence or disorder is posed by them. (After all, his first two books--<u>Ending White Slavery</u> and <u>The Racial Loyalist Manifesto</u>--were allowed by the BOP to go out.) Rather, they are targeted

2

because he has a view of the world which the BOP does not happen to share and which it feels emboldened to suppress in light of the growing anti-white hostility on the part of the federal government, particularly that of the Joe Biden administration.

WHEREFORE, Hale prays for judgment in his favor on this Claim <u>Six</u>.

**Claim Seven**    Violation of First Amendment freedom of speech by taking away Hale's access to the BOP's email service due to the particular <u>speech</u> which Hale had expressed therein.

38. Hale repeats and realleges para. 1-37 as if fully stated herein.

39. Prisoners throughout the BOP are allowed to email the outside world (called "Trulincs") except in cases where they are in a secured housing unit ("SHU"), closed confinement (at ADX, for instance), or have had that access taken away for disciplinary reasons. Hence Hale, when he arrived at the CMU from ADX in 2020, was likewise given access to the BOP's email service.

40. For more than a year, Hale utilized that access without incident. No allegations of misconduct regarding his email usage were made and no misconduct by his person in fact took place. He shared his thoughts with his friends on race, politics, culture, good books and music, and the like. In particular, for several months he shared a "Quotation of the Day" which he sent out on a semi-routine basis. These quotations consisted almost always of mere personal reflections of his but sometimes were that of somebody else. In any event, he had no reason to believe that there was anything wrong with his particular usage of the BOP email service, nor did staff at any time warn or advise him that there was. He simply expressed what he thinks as every prisoner has the right to do.

41. Nevertheless, in November 2021, Hale's access to the BOP email service was suddenly and without explanation taken away from him. He clicked on the email access button on his account and it no longer worked.

42. When Hale asked Kathy Hill, the so-called "Intelligence Research Specialist" of the CMU, why his access to email had been taken away from him, she replied, "your analyst [Michael Collis] says that you have had too many emails rejected." That story, however, changed the following month when he heard back from Case Manager Nate Simpkins who stated to him, "[y]ou continued emailing someone who had been removed from your approved contact list." That though is technologically impossible: when staff removes someone from a prisoner's contact list, <u>it is no longer possible for the prisoner in question to email that person</u>, period, nor did Hale in fact do so here. Amazingly though, the BOP chose to double down fifty-three times over on its false claim in February 2022, the Warden asserting to Hale that the latter had "sent 53 e-mails to multiple rejected contacts." Again, this is untrue; at <u>no</u> time did Hale ever send an email to a rejected contact, let alone a whopping 53 of them; the idea that Hale had engaged in such activity is thus total mythology. As alleged elsewhere within this Supplemental Complaint, the BOP wants to silence Hale's <u>opinions</u>, quite simply, and is willing to lie again and again to accomplish that (unconstitutional) goal. The employees of the BOP have total contempt for the Constitution of the United States--at least the liberties it affords <u>Hale</u>--and are willing to say and do anything to evade the strictures of that document in his regard in order to cause him and those of his viewpoint grief.

43. To be clear, the BOP took away Hale's email access because it does not like the views he holds, at least in part. It knows that Hale has a constitutional right to express those views but it does not care. A legitimate penological interest was neither sought by taking away his email access nor achieved by so doing. This is because the BOP did not <u>sincerely</u> perceive that any sort of actual "threat" to anybody or anything was being posed by his emails, in any way. It is not so, for instance, that Hale ever used his

email access to even remotely encourage any sort of violent, illegal, or disruptive activity anywhere, the sort of activity which the BOP <u>does</u> have a "legitimate penological interest" in suppressing.  Rather, every email Hale ever sent while at the CMU was squarely within his basic First Amendment rights to send; hence why the BOP felt compelled to fabricate the laughably absurd story that Hale had "continued" to email people whom the BOP had blocked from his account which quite simply never occurred.  Put another way, the BOP does not have a "legitimate penological interest" in taking away a prisoner's access to email simply for the non-violent, lawful, and non-disruptive views on life he expresses and then lie about it in order to get away with its own misconduct.  Hence there was no "legitimate penological interest" here on the part of the BOP.

<u>44</u>.  Incidentally, what Hill initially told Hale is likewise false:  it is untrue that he had many emails rejected by staff.  There were a handful over the course of more than a year, no more, and even <u>they</u> were rejected in violation of Hale's First Amendment rights since they involved the mere expression of <u>opinion</u> and nothing more.

<u>45</u>.  Had Hale actually engaged in any sort of misconduct regarding his email usage--including continuing to send emails to "rejected contacts" as the BOP has claimed took place--he would have been charged with having violated the prisoner conduct code.  Therefore, the fact that Hale was <u>not</u> charged with violating any BOP disciplinary rules with regard to his email usage shows that that usage was stripped from him on false and pretextual grounds.  Attempting to circumvent BOP monitoring procedures--such as blocks on specific people-- is a serious offense and there is no way that the BOP would have allowed such conduct to go uncharged had it really occurred.

<u>46</u>.  In any event, the annihilation of Hale's right to freedom of speech is not the sole motivation for why the BOP has taken away Hale's email usage.

5

As stated in para. 31, it is also the intention of the BOP to goad him into a violent act by treating him so outrageously. The BOP is not content with the fact that Hale is already scheduled to spend another 14+ years in prison. Rather, it sees him as an enemy of the state who must be destroyed. It <u>wants</u> Hale to resort to violence because that is what "white supremacists" supposedly do and because that would enable the federal government to imprison him for the rest of his life. <u>Without</u> any violence on his part on the other hand, there is no justification, even remotely, for Hale having <u>ever</u> been at a supermax prison (ADX), a "CMU," or having <u>ever</u> been subjected to any other of the onerous conditions of confinement he has endured the past nearly 18 years since he was sentenced in April 2005 to federal prison. The BOP cannot possibly believe that treating Hale so badly is an <u>anti</u>-recidivist policy. No, it <u>wants</u> him to commit crimes, desperate as it is to silence, encumber, or permanently imprison one of the leading <u>thinkers</u> of the White racialist perspective. His <u>ideas</u> are a threat to the federal government, a government which, in Hale's view, has betrayed the White people who were gracious enough to create it in the first place. The BOP cannot stand criticism of federal <u>power</u>, a criticism which is both explicit and implicit in his writings and yet is constitutionally protected all the same.

<u>47</u>. Even aside from the BOP's particular animus towards Hale as heretofore described however, the BOP is in <u>general</u> interested in testing how far a peaceful man--such as Hale--can be pushed before he resorts to violence against his tormentors. It has thus selected Hale for this purpose, having launched a <u>psyops</u> against his person. "Psyops" is defined by the Merriam-Webster Collegiate Dictionary (11th Edition) as "military operations usually aimed at influencing the enemy's state of mind through noncombative means." While the BOP is not a "military" per se, it is run like a military and many of its employees are in fact ex-service members; most importantly,

6

it sees itself as having a fundamentally adverse relationship with the prisoners in its custody the same way that a military does with an enemy on a battlefield. Hence the BOP is willing to employ psyops and other "military operations" against its prisoners, considering itself in a sort of "war" with same. (BOP staff members are trained to look at the prisoners in their custody as the enemy, as social deviants who are a constant danger to themselves and others.) In any event, discovery in this case will show that the BOP has in fact employed a psyops against Hale, along the lines described.

48. Indeed, when Hale specifically asked the Chief Psychologist at USP Marion, a Ms. L. Owings, whether a psyops had in fact been launched against his person, she did not deny it and this is the case even though Hale had explicitly told her that a lack of response to his query would be taken as an affirmation of its truth. Hence the BOP has <u>itself</u> essentially corroborated that it is seeking to influence Hale's state of <u>mind</u> with its contemptible psyops conduct.

49. In any case, because the BOP considers itself at war with Hale, it is willing to lie as necessary for his "defeat," including to this Court. The BOP's word therefore cannot be taken at face value in any respect in this case, whether it is stated under oath or not. Thus, any denial of Hale's allegations against it herein and within his Verified Complaint (Doc. 1) must be subjected to adversarial testing at the trial which Hale has demanded in this case rather than be adjudicated via a summary judgment motion; after all, since the employees of the BOP are willing to lie to achieve the (illegitimate) objectives of the BOP, nothing it says in a legal filing can be taken as true on its face, nor are BOP officials ever subjected to perjury prosecutions by the Justice Department whereby their willingness to lie about Hale could ever be deterred or punished.

50. In any event, what Hale is alleging here is that dishonesty about him and

7

his communications is part and parcel of the BOP's behavior towards him. It will _say_ that Hale has done this or that without this or that even being remotely true or proven. Not only is the BOP desirous of causing Hale psychological grief by virtue of its repeated lies about his communications and person but it will no doubt lie to this Court as well in order to achieve its "legal" victory in this case. That is simply how the BOP operates, as Hale will prove in the course of this case.

51. In a sense, the BOP's actions against Hale as alleged within this Claim Seven are really just an extension of the _modus operandi_ which the federal government (FBI) had applied towards him more than twenty years ago before his arrest: silence Hale regardless of the facts. It is the _FBI_ which had sent an agent provocateur into his church in 1999 and had that agent provocateur seek to inveigle Hale into criminal activity again and again in an effort to remove him from society, the FBI doing this in total disregard of his First Amendment rights and because it deemed itself hostile to his particular exercise of same (see Motion to Dismiss Indictment on grounds of outrageous government misconduct, _United States v. Hale,_ 03 CR 011, Northern District of Illinois, Eastern Division). The fact that Hale never committed a crime at all did not save him from being eventually convicted, just as his lack of any wrongdoing here did not prevent his email access from being taken away from him either. So no, Hale cannot and will not pretend that he is actually guilty of any criminal offense which would justify the truncation or theft of his precious First Amendment rights: whether now, twenty years ago, or ever. Hale asserts his innocence of having committed any crime as a matter of _fact_, not law, and that innocence exists regardless of any erroneous jury verdict to the contrary at his 2004 criminal trial.

52. In addition though, Hale just discovered on December 1, 2022 that Collis --at least _ostensibly_--had been under the (bizarre) impression that the Tenth

Circuit Court of Appeals had given the BOP the imprimatur to reject and otherwise censor any and all communications of his which express thoughts which are merely consistent with those of Creativity, Hale learning of this after having read several internal BOP (United States Department of Justice) memoranda which had been attached to the Warden's responses to his administrative remedy requests surprisingly enough.  The BOP's understanding though of the Tenth Circuit opinion is simply untrue:  the decision in Hale v. Federal Bureau of Prisons, 759 Fed. App'x 741 (2019) does not extend to whatever beliefs Hale himself may personally hold; it only allows for the "preventing [of Hale] from sending or receiving correspondence that contains any reference to Creativity, the Creativity Movement, the Worldwide Church of the Creator, the Creativity Alliance, or any permutation of or code for these group names."  Id at 744, note 1 (emphases added).  Still, even though Hale subsequently made Collis aware of this through a series of (one-way) communications--as well as the Warden and other BOP officials for that matter --the BOP has thus far failed to alter its contemptible conduct as described above.  It is actually proceeding on the basis that it has the right to ban Hale from telling his mother that he loves her, that it has the right to stop him from condemning the war in the Ukraine, and that it has the right to stop him from saying that all men are not created equal...all because these beliefs, and many others, are merely consistent with the beliefs of Creativity.  In practical terms, this means apparently that Hale is only allowed to express opinions which he does not in fact happen to hold and this is an abomination to the law.  (Since Hale is a Creator, everything he says is bound to be consistent with Creativity, naturally enough.)

    WHEREFORE, Hale prays for judgment in his favor on this Claim Seven.

<u>Claim Eight</u>   Violation of First Amendment freedom of speech by taking away Hale's access to the U.S. Mail.

53. Hale repeats and realleges para. 1-52 as if fully stated herein.

54. Upset that this Court had declined to dismiss his Claims One, Two, and Five in its July 29, 2022 order, and believing that doing so would enable the BOP to effectively thwart any motion for a preliminary injunction on those claims which Hale would deign to file, counsel for the BOP advised the BOP in August or September 2022 to take away Hale's access to the United States mail, which the BOP in fact did on October 3, 2022 when a notice of general correspondence restrictions was given to him. Said restrictions prevent him from writing (or receiving letters from) anybody but immediate family members (he cannot write his nieces or cousins for example), lawyers, or the courts.

55. No rationale was provided to Hale for the imposition of the new mail restrictions (hereafter "mail ban") and no such rationale in fact exists in law. Hale did nothing whatever wrong with his mail and there was nothing about it violative of prison rules. (No infractions against him were issued, nor did his mail usage have any connection whatever to his religion or church the BOP finds so objectionable.) To be sure, BOP employee Michael Collis has repeatedly lied about the contents of Hale's outgoing letters in order to reject same and this may have motivated the Warden at USP Marion to grant any request on Collis' part that the mail ban be imposed. However, the fact remains that there was not even remotely anything illegal, threatening, disorderly, or otherwise censorable about the letters in question or Hale's mail in general. At most, Hale expressed his <u>opinions</u> on racial and political matters just as he has always done since he became a prisoner of the BOP and such speech is <u>protected</u>.

56. In fact, there was a marked increase in the rejection of Hale's outgoing

10

letters immediately following this Court's July 29, 2022 order declining to dismiss Claims One, Two, and Five but <u>granting</u> the removal of Collis as a defendant in this case. Thus, no longer being on the hook for money damages, Collis took that as a green light to step up his personal and malignant persecution of Hale, rejecting dozens of perfectly unobjectionable letters and ultimately prevailing upon the Warden to take away Hale's mail altogether. (After all, without the prospect of money damages being imposed for reprehensible conduct, how can such conduct be deterred?)

<u>57.</u> In any event, Collis is an integral player as to all of the allegations herein. Furthermore, Collis specifically informed counsel for BOP in August and/or September 2022 that Hale planned on filing a motion for a preliminary injunction on Claims One, Two, and Five, Collis having gleaned this plan by virtue of his being able to listen to all of the phone calls which Hale places to his mother from USP Marion. Collis listens to all of his phone calls, learned of his intent to file a preliminary injunction motion--providing this Court with overwhelming evidence of his misconduct supporting same--and informed counsel for the BOP who advised the BOP that Hale's mail should be taken away from him altogether so that any injunction obtained on the three claims could be rendered ineffective. (Ordering the BOP to cease censoring Hale's book <u>The Triumph of Life</u> (Claim One), his articles (Claim Two), and his letters in general (Claim Five) presumes that he is allowed to use the U.S. mail at all, in particular that he can send that material to the appropriate people.) So, the intent of the BOP here was <u>not</u> to further a legitimate penological interest but rather to gain advantage in a civil lawsuit, and to nullify any potential orders of this Court in Hale's favor. Furthermore, by taking away Hale's access to the U.S. mail, Collis could effectively eliminate the production of any further evidence against him prospectively: if Hale no longer has the ability to send out a letter to his friends at all, he

11

cannot very well show that Collis is (currently) mistreating said mail. So, Collis urged Warden Sproul to take away Hale's mail for this reason as well; no mail means no (further) evidence against the BOP that Hale's individual letters are being mistreated in violation of the First Amendment to the Constitution of the United States.

58. That said, everything which Hale has alleged as to the BOP's motives in taking away his email access (Claim Seven) applies specifically likewise to the BOP's taking away of his mail access and he need not repeat that verbatim here. He will though add that a desire on the part of the BOP to goad a prisoner into committing acts of violence is not a legitimate penological interest. It is not a legitimate penological interest to try to turn a thinker of controversial thoughts into a doer of violent deeds just so that even more oppression of his person may be "justified." That, again, is the intent of the BOP. It does not like what Hale thinks about the world and desires to keep those thoughts from reaching the public regardless of whether that is lawful or not and regardless of the cost. There is no other way to explain what the BOP has done in his regard.

59. At no time during his entire tenure in the BOP has Hale ever urged, advocated, or solicited a violation of either state or federal law, period, and yet the BOP has proceeded against him all the same as herein described. (The federal magistrate judge supposedly "target[ed]" by Hale--cited by this Court in Doc. 29 at 2-3--was merely criticized by him for having rigged evidence against him in his criminal case when he was the prosecutor thereof, something which Hale had and has a legal right to do. The press release had nothing to do with any purported "followers and supporters" of his; it was aimed at getting the press to investigate his claim of prosecutorial misconduct which had led to his conviction on phony "solicitation" charges.) In any event, had Hale actually violated any law or BOP policy with his mail since

his arrival at USP Marion CMU, he would have been <u>charged</u> with that. Instead, the absence of any such charges goes to show that it is <u>Hale</u> who stands in the right.

60. The BOP does not have a "legitimate penological interest" suppressing literally <u>any</u> lawful point of view, including Hale's. As long as Hale does not urge, advocate, or solicit any sort of law breaking or disruptive <u>conduct</u>, the BOP had and has no legal right to strip him of access to the U.S. mail, preventing him from writing his friends in the outside world.

    WHEREFORE, Hale prays for judgment in his favor on this Claim <u>Eight</u>.

**Claim Nine**   First Amendment Retaliation

61. Hale repeats and realleges para. 1-60 as if fully stated herein.

62. The purpose of the BOP in taking away Hale's usage of the U.S. mail as heretofore described was, in part, to retaliate against him for 1) having brought this lawsuit against it, 2) having the audacity to continue pursuing the case even after two of his claims were dismissed including filing a motion to reconsider the dismissal of those claims, and 3) having expressed a critical opinion of the BOP specifically and the federal government in general, along with a point of view that the preservation of the White Race is a noble and worthwhile goal. The intent of the BOP was that Hale be deterred from making any claims against the BOP in the future and that he cease expressing pro-White sentiment within his correspondence whenever such correspondence would be restored to him. Retaliation is part and parcel of the <u>modus operandi</u> of the BOP; here, the BOP wanted Hale to pay for daring to express his mind in ways, though lawful, which the BOP disapproves of as far as its individual employees are concerned. In effect, the BOP is telling Hale: don't protest how we treat you or express support for the pro-White cause <u>or we are going to hurt you even more than we have already</u>.

13

63. To say that Hale's speech has been "chilled" here is an understatement. Even if the mail ban were to be lifted by the BOP tomorrow, he would be unable to say anything at all as to what he thinks about the racial, social, and political issues of our day without having the fear that his mail would be taken away from him again.

WHEREFORE, Hale prays for judgment in his favor on this Claim <u>Nine</u>.

## Request for Relief

Hale requests injunctive relief as follows:

1) that the BOP be ordered to mail out his book, <u>Racism: A Reappraisal</u>
2) that the BOP be ordered to restore his access to the BOP email service
3) that the BOP be ordered to restore his access to the U.S. mail, allowing him the same rights as all other prisoners in that regard
4) that the BOP be ordered to refrain from any further retaliation against him for the expression of his constitutionally protected opinions

## Declaration

I swear under penalty of perjury under the laws of the United States that all of the foregoing is true and correct according to my personal knowledge and belief.

*Matthew F. Hale* (signature)

Matthew Hale, pro se
December 18, 2022

Matthew Hale #15177-424
USP Marion CMU
P.O. Box 1000
Marion, IL  62959

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Verified Supplemental Complaint was placed into the inmate mailing system where I am housed on December 19, 2022 via first class mail prepaid, addressed to the following attorney who represents the defendants in this case:

Kenneth Adebonojo
Asst. U.S. Attorney
555 4th Street, NW--Civil Division
Washington, DC  20530

*Matthew F. Hale*
Matthew Hale, Plaintiff pro se

15